## THE HERCULES.

### GENTHUER v. THE HERCULES.

#### (District Court, E. D. New York. September 28, 1894.)

1. WITNESSES—IMPROPER INFLUENCES—THREATS OF CRIMINAL PROSECUTION.
   The conduct of claimant's agent, in causing it to be made known to a witness who had given damaging testimony that he was in danger of prosecution for a criminal offense, whereby the witness was moved to offer himself as a witness for claimant, and thereupon gave a deposition contradicting many of his previous statements, strongly disapproved by the court, and considered to cast a doubt upon the testimony of another witness produced from the same source.

2. TOWAGE—LOSS OF TOW IN STORM.
   Tug *held* in fault for taking barges out of the protection of the Delaware breakwater, and starting on a voyage to Boston, in the face of strong indications of an approaching storm, contrary to the judgment of other tugboat captains in the breakwater at the time, and for refusing to turn back until it became impossible to proceed, and until one of the barges had sprung a leak, from which she sank.

This was a libel by Philip C. Genthuer against the steam tug Hercules to recover for the loss of the Saugerties while in tow of the tug.

Benedict & Benedict, for libelant.

Robinson, Biddle & Ward, for claimants.

BENEDICT, District Judge. On the 2d day of March, 1893, the steam tug Hercules took in tow in the Delaware river the barge Saugerties and the barge Moonbeam, under a contract to tow them, one to Boston, Mass., and the other to Providence, R. I. In the afternoon of the 2d of March the tug left the Delaware breakwater and put to sea with these two barges, in the face of evident signs of approaching storm. The heavy weather indicated was encountered outside. On the 4th of March, while in a heavy sea, the Saugerties sprung a leak, and shortly afterwards sank in about 17 fathoms of water, and became a total loss. Thereafter the tug turned back with the Moonbeam, which was disabled in the storm by the breaking of her tiller, and with her arrived in safety at the breakwater. The owners of the Saugerties now sue the tug to recover for the loss of their barge, charging the tug with negligence in putting out from the refuge of the breakwater into the storm then threatened, and also in failing to turn back after the storm was encountered. The claimants contend that the sinking of the Saugerties arose from her being unseaworthy, and that there was no negligence on the part of the tug.

Upon these issues a mass of evidence has been presented, in which there is to be found testimony supporting either contention. I have examined all this testimony, but I do not feel it incumbent on me to comment on its particular features, further than to say that the conduct of Harry Hull, assistant superintendent of the line to which the Hercules belongs, in connection with the testimony of the witness William Kendrick, cannot be passed over without notice. The witness Kendrick was the master of the Hercules. He was examined in behalf of the libelant by deposition, and gave testimony favorable to the libelant's contention. At the taking of this first deposition the information was conveyed to the witness that it was known to the claimants that there was foundation for a criminal charge against him, arising out of his naturalization papers obtained by him in Boston. Thereafter the witness was made to understand that he was in danger of prosecution for that offense, and was brought in connection with the superindendent, Hull, by means of his brother-in-law. Thereafter, acting under the idea that he would thereby avoid a criminal prosecution in connection with his naturalization, he offered to be examined in behalf of the claimant. At this last examination he contradicted many of the statements he had made in his first deposition. After that both he and his brother-in-law were given employment by the claimants. This method of dealing with a witness who gives damaging testimony is strongly disapproved of, and tends to raise a doubt in regard to the testimony of the witness Johnston, produced from the same source, to support the statements of Kendrick.

The testimony in the case, taken together, seems to me to require the conclusion that the master of the Hercules, contrary to the judgment of other tugboat captains in the breakwater at the time, put out with his heavy tow from the protection of the breakwater, in the face of strong indications of the approach of a storm; that the storm was encountered outside the capes, and was dangerous, not-

withstanding which the tug proceeded on her way, until finally it became impossible to make any noticeable progress with the tow. Instead of turning back, as she could have done, and as she afterwards did with the Moonbeam, the tug subjected the Saugerties to the force of a severe storm for many hours. The result was that the Saugerties sprung a leak, and her pump became disabled by the storm, so that she filled with water and sank. Upon these conclusions of fact I find that the tug was guilty of continuing to face a dangerous storm after she experienced its force, when common prudence required the master to turn back, and seek the shelter of the breakwater. The failure to exercise this measure of prudence was, in my opinion, negligence, and rendered the tug liable for the loss of the libelant's barge. There must be a decree for the libelant, with a reference to ascertain the amount of the loss.